MARY J. DAVIS, APPELLEE, V. PATRICK MANNING, APPELLANT.

FILED OCTOBER 2, 1915. No. 17926.

1. **Landlord and Tenant:** DEFECTIVE PREMISES: LIABILITY OF LANDLORD. The rule of *caveat emptor* applies to leases of real estate, and, in the absence of warranty, deceit, or fraud on the part of the lessor, the lessee cannot recover for personal injuries received through latent defects therein, of which the lessor had no knowledge at the time of making the lease, and which were as patent to the lessee as to the lessor.

2. **Paragraphs** 3 and 4 of our former opinion, *Davis v. Manning*, 97 Neb. 658, overruled.

REHEARING of case reported in 97 Neb. 658. *Former judgment of affirmance vacated, and judgment of district court reversed.*

MORRISSEY, C. J.

This cause is before us on rehearing; the original opinion being found in 97 Neb. 658. The only question which will be given consideration at this time is that of the lia-

bility of landlords, covered by paragraph 3 of the syllabus in our former opinion, and embodied in instructions numbered 4 and 9 given by the trial court. The action is one for damages by a tenant against her landlord for injuries sustained because of what is alleged to be a defective condition of the floor. The house had been erected 25 or 30 years before the date of the accident, and had been used all these years for a dwelling, plaintiff having been a tenant therein on two separate occasions prior to her last tenancy, which began several months prior to the date of the injury. When the house was built there was a cellar constructed under the main part thereof, and there was a brick wall laid, upon which the kitchen rested. No openings were left for ventilators, and it is contended that, because of this failure, the kitchen floor became affected by dry rot on the lower side, while the upper surface of the boards remained sound; that plaintiff had no knowledge of this condition, and that while engaged in her regular household work she stepped upon a board, which had become so rotten that it was unable to support her weight, and her foot passed through the floor and she suffered the injuries complained of.

It is claimed that, if defendant did not have actual knowledge of the condition of the floor, he ought to have known of the dangerous condition, and the court instructed the jury: "(4) In order to recover in this case, the plaintiff must show by a preponderance of the evidence the following facts: * * * That the defendant knew of said defect in said kitchen floor at the time of the last leasing of said premises, or should have known of the defect in said floor by the exercise of reasonable care in observing the natural law of decay of said kitchen floor; that the plaintiff did not know of the defect in said floor, and that the same was latent or hidden and could not have been discovered by the plaintiff by using ordinary care and caution in endeavoring to discover the same."

By paragraph 9, the court instructed the jury that defendant could not be held liable for damages, "unless * * * the kitchen floor was in fact in a dangerous and

defective condition, and that the landlord knew that said floor was in said dangerous and defective condition."

By these paragraphs two inconsistent rules were submitted to the jury, the former saying that defendant was liable if he knew or "should have known" of the defect, while the latter paragraph held defendant liable only in case he had actual knowledge of the defective condition. If the rule laid down in paragraph 4 is correct, the giving of paragraph 9 was without prejudice to defendant; but, if the rule stated in paragraph 4 is incorrect, it was not cured by the giving of paragraph 9. Plaintiff does not seriously contend that defendant had actual knowledge of the defective condition of the floor, but the right to recover is based on the theory that, defendant having built the house for his own use, and being present when the work was done, and knowing that the kitchen was built over a dark, damp hole, without any provision being made for ventilation, was bound to take notice of the "natural law of decay," and therefore was presumed to know that 25 or 30 years after the erection of the house and the laying of this floor, which was of the best quality of white pine, an inch or more in thickness, the floor was in a defective and dangerous condition; and that, under the rule laid down in paragraph 4 of the court's instructions, he is liable for the injury.

There is no evidence to show that defendant had actual knowledge of the defective condition alleged, and it is not seriously contended by plaintiff that there is any evidence to support the rule laid down in paragraph 9. From the very nature of the case, plaintiff must have known the condition of the floor better than did the defendant. She had lived in the house before, and for several months prior to the accident she occupied that kitchen. She knew, or might have known, the age of the house. The record shows that it was old and dilapidated in appearance. It was plainly to be seen that there were no ventilators under the kitchen, and the tenant must be held to have equal knowledge of the law of decay as the landlord. There was no concealment of defects actually known to the landlord.

Davis v. Manning.

The cases covering the question under consideration are found in a note to *Walsh v. Schmidt*, 206 Mass. 405, in 34 L. R. A. n. s. 798, and, with a single exception, they show the rule to be that, in the absence of warranty, deceit or fraud, a landlord is not liable for injuries sustained by a tenant from defects in the demised premises, unless he had actual knowledge at the time of the lease of such defective condition. *Kurtz v. Pauly*, 158 Wis. 534. The exception is to be found in *Hines v. Willcox*, 96 Tenn. 148, 34 L. R. A. 824, and, on rehearing, *Willcox v. Hines*, 100 Tenn. 538, 41 L. R. A. 278, in which case it is held that the landlord is liable for personal injuries received by a tenant from defective premises, not only where he has actual knowledge of the defect, but also if by the exercise of reasonable care and diligence he might have had such knowledge. The annotator in 34 L. R. A. n. s. 798, *supra,* points out that this doctrine goes further than other adjudicated cases, that it is not based upon precedent, and has never been followed by the courts of other jurisdictions; but, on the other hand, the doctrine therein asserted has been considered by the courts and expressly disapproved. In *Shinkle, Wilson & Kreis Co. v. Birney & Seymour*, 68 Ohio St. 328, in a discussion of this holding, the court said: "It is not reconcilable with the principles of the law, nor with the decided cases which are entitled to be recognized as authoritative."

The rule of *caveat emptor* applies to leases of real estate, and, in the absence of warranty, deceit, or fraud on the part of the lessor, the lessee cannot recover for personal injuries received through latent defects therein, of which the lessor had no knowledge at the time of making the lease, and which were as patent to the lessee as to the lessor.

When this rule is applied, there is a total lack of evidence to sustain the verdict. Paragraphs 3 and 4 of our former opinion overruled, and the judgment of the district court is reversed and the cause remanded.

REVERSED.

HAMER, J., not sitting.

SEDGWICK, J., dissenting.

The question upon which the decision in this case depends I think is rather a question of fact than of law; and the third paragraph of our former opinion ought not to be overruled.  In England, by statute, a rented house must be in all respects reasonably fit for human habitation, and it was there held that a landlord is liable in case the premises are not reasonably fit for habitation so that the plaster on the ceiling falls and injures the tenant.  But in this country the courts have generally applied the rule of *caveat emptor* between landlord and tenant about the same as the rule is applied between vendor and purchaser.  That rule is that the landlord is not liable for "latent" defects which the tenant has equal opportunity to observe.  "It is not his duty to search for defects, and if the defect is easily discoverable he need not mention it."  But "if he knows of a defect which is likely to produce injury, the nature of which is such that careful examination by the tenant would not disclose it, he must notify the tenant of it."  Note to *Hines v. Willcox*, 96 Tenn. 148, in 34 L. R. A. 824, 827.  This seems to be the universal rule, as it is between vendor and purchaser.  When can it be said that the landlord *knows* of defects?  Does this mean that he must have personally seen and examined the defect?  I think that the majority opinion goes so far as to so hold. If some one else had seen and examined the defect and had suggested it to the landlord, the landlord could not have been said to *know* of it, as defined in the majority opinion.  This, of course, is not the meaning of the expression in the authorities cited.  The Massachusetts court has gone as far perhaps as any court in this country in relieving the landlord from liability for unknown and hidden defects that would require investigation to ascertain them, but that court in a recent decision has decided:  "If there is a concealed defect that renders the premises dangerous, which the tenant cannot discover by the exercise of reasonable diligence, of which the landlord has or *ought to have* knowledge, it is the landlord's duty to disclose it, and

he is liable for an injury which results from his conceal-
ment of it." *Booth v. Merriam,* 155 Mass. 521.  The ex-
pression "or ought to have knowledge" is a stronger ex-
pression than the one in the third paragraph of the sylla-
bus of our original opinion in this case.  The words there
used are: "Or ought to know from facts within his knowl-
edge that it is dangerous."  This I think is clearly the
law.  If the landlord *knows facts* which would necessarily
cause the defect, he, within the meaning of all the cases,
must be held to know the defect; so that it is a correct
statement of the law to say that, as in the third para-
graph of the syllabus of the former opinion, if he "knows
at the time, or ought to know from the facts within his
knowledge," that it is dangerous, then he must warn the
tenant, if "the conditions are such that an ordinarily pru-
dent person, situated as the tenant was, would not know
the danger."  I think, therefore, the third paragraph of
the syllabus of the former opinion ought not to be over-
ruled.

The question, then, is a question of fact.  The evidence
shows that certain facts were within the knowledge of the
landlord.  Were these facts such as would lead reasonable
men to the conclusion that the floor was dangerous?  If
they were, then the next question is:  Was the tenant so
situated that she would not know these facts from which
any reasonable person would conclude that the floor was
dangerous?  Those two questions are the vital questions
in this case, and are questions of fact, and not of law.  We
should probably follow the rule of *caveat emptor,* which is
so well established in this country.  It has been a little dif-
ficult to apply this rule with exact justice in some cases,
and some of the opinions seem a little extravagant in pro-
tecting reckless landlords.  The rule should not be strained
in favor of shrewd landlords, who are familiar with the
construction of buildings and the general condition of the
same, against an elderly lady who has no such knowledge
and experience, and who must necessarily rely upon the
good faith of the landlord.  This case is a difficult one

at best, and it would seem that the evidence is such as to require these questions of fact to be submitted to a jury.

FAWCETT, J., concurs in the above dissent.