## KENNEDY v. SUPNICK.

No. 10297—Opinion Filed July 12, 1921.

(Syllabus.)

**1. Landlord and Tenant—Duty of Landlord to Keep House in Safe Condition—Merchant Tenant.**

Where a landlord leases to one tenant the first story of a two-story building, retaining the second story, which he leases to other tenants and agrees with the lessee of the first story to keep other portions of said building in such condition and repair that the stock of goods belonging to the lessee of the first story shall not be damaged by the elements, there is no obligation resting upon the lessee of the first story to notify the landlord of any defective condition of the roof of said building. It is the duty of the landlord to keep the roof of said building in such repair that the tenant of the first story, who has no charge or control over the remaining portions of said building, shall not suffer any loss or damage to his stock of goods by reason of water leaking through the roof of said building when it rains.

**2. Same—Action by Tenant for Damages to Goods—Instruction.**

Under the facts and evidence in this case it was not error to give instruction No. 4.

**3. Same—Defensive Evidence — Admissibility.**

Where the defendant offered to prove by a witness that at the time of the rain complained of said witness saw tubs and pans placed in some of the rooms in the second story of the building and immediately above the storeroom of plaintiff, which tubs and pans caught the major portion of the water dripping through the roof, but that a small quantity of water was not caught but leaked through the store of the plaintiff, held, that it was not error to refuse the proffered testimony. The words "major portion" and "small quantity" are relative terms, and do not tend to disprove the fact that the plaintiff suffered damages as alleged.

**4. Witnesses — Cross-Examination — Scope.**

A defendant may not be permitted to make out his defense by the cross-examination of the plaintiff or his witnesses on matters not brought out on direct examination.

Error from County Court, Tulsa County; W. B. Williams, Judge.

Action by H. E. Supnick against J. L. Kennedy to recover damages. Judgment for the plaintiff. Defendant appeals. Affirmed.

Edward P. Marshall, for plaintiff in error.

Robinson & Mieher, for defendant in error.

MILLER J. This action was commenced in the county court of Tulsa county by H.

E. Supnick, as plaintiff, against J. L. Kennedy, defendant, to recover damages to a stock of goods belonging to the plaintiff, and which goods were in a building belonging to the defendant. The damage was occasioned by reason of the roof being in such a defective condition that when it rained the water percolated through and injured the stock of goods. The case was tried to a jury, which resulted in a judgment in favor of the plaintiff in the sum of $500, to reverse which the defendant, Kennedy, perfected this appeal and appears here as plaintiff in error. In the briefs filed herein the parties have been referred to as they appeared in the lower court, and for convenience will be so referred to here.

Defendant, Dr. J. L. Kennedy, was the owner of a certain two-story brick building located on Main street in the city of Tulsa, which is the building in controversy in this action. On May 19, 1915, Dr. Kennedy executed a lease to the plaintiff, H. E. Supnick, whereby he leased and let to the said Supnick the first floor or storeroom of said building for a period of two years, commencing on the 1st day of June, 1915, and ending on the 31st day of May, 1917. This lease was, by agreement of the parties, continued in force or extended for a period of three years longer. During this extension period, and on or about the 27th day of November, 1917, a rain occurred which caused the damage complained of by plaintiff.

The second story of said building was occupied by other tenants to whom Kennedy leased from time to time the different rooms located on the second floor. All of the upper part of said building remained in the control of Kennedy. The plaintiff, Supnick, had no right of access to or control over it. The parties, for the purpose of protecting the plaintiff, Supnick, against loss or damage by reason by any subsequent defective condition of that part of the building over which plaintiff had no control, included as a part of said written lease the following paragraph:

"The party of the first part shall keep the other portions of said building upon the lot and block hereinabove described in such condition and repair that the party of the second part shall not be interrupted in quiet enjoyment of said premises to him leased, and that any stock or stocks of goods, or merchandise stored in said premises shall not be damaged by the elements, except, that the party of the first part shall not be liable or responsible for any damage occurring or arising from any damage done to other portions of said building by said party of the second part, his employes, servants, or agents."

In May, 1917, a rain came which caused a slight damage to plaintiff's goods. He made complaint to Kennedy, and the evidence shows that he made complaint two or three different times, but that no complaint was made after sometime in June and before the, damage in November occurred. The evidence shows that defendant, Kennedy, went to California sometime in June, and did not return until late in the fall. The plaintiff testifies that one reason he did not make complaint was because there was no heavy rain which caused a leakage during the summer months and early autumn, and that the defendant was not present so that he could make complaint. There is some evidence to the effect that someone made or attempted to make some repairs on the roof about the last of May or first of June, 1917. After the damages complained of in November, the defendant remedied the defects by putting on a new roof.

The defendant, Kennedy, makes several assignments of error and then discusses them under four heads, which we will take up in the order they are discussed by plaintiff in error.

"1. In order that a landlord be charged with liability in damages for a breach of a covenant to keep in repair, it must appear that notice of the want of repair was given to him and that he failed to repair within a reasonable time thereafter.

"Inasmuch as the evidence failed to disclose this prerequisite of liability, defendant was not liable herein and the court below erred in overruling defendant's motion for a directed verdict and erred in refusing to grant a new trial herein on defendant's motion."

To support this contention the defendant has cited numerous authorities, but these authorities all deal with a lease wherein there is either no special covenant against damage or where the lessee has leased the entire building and has the management and control of all of it. This case presents a different proposition.

"Where there is a lease of only a part of a house and an injury results from a want of repairs in another part, the lessor's liability will depend upon his control of such other part, and upon his negligence, and he will be liable, if at all, not from any implied liability to repair, but from his negligently suffering a nuisance in the part under his control to the detriment of the tenant of the other part." 16 R. C. L., sec. 556, page 1036.

"Where he is guilty of negligence, either personally or through his employes, in

respect to the portion of the premises occupied by him, or over which he retains control, he will be liable for the injuries resulting to tenants of other portions of the premises without fault on their part." 16 R. C. L., sec. 556, page 1036.

"It is generally held that where he (the landlord) retains possession of a portion of leased premises for use in common by different tenants, a duty is by law imposed upon him to use ordinary care to keep in safe condition this particular part of the leased premises, and if he is negligent in this regard and a personal injury results to a tenant by reason thereof, he is liable therefor." 16 R. C. L., sec. 557, page 1037.

"A landlord is liable to his tenant * * * for injuries resulting from the landlord's negligence in managing such portions of the premises as are retained under his control." 16 R. C. L., sec. 600, page 1083.

"The rule relieving a landlord in the absence of a special agreement from making ordinary repairs during the term does not release him from liability in case of injuries resulting from his failure to keep in proper repair such portions of a house as are not leased to any particular tenant, but are retained in the control of the landlord for the common use of several tenants." 24 Cyc. 1115. See, also, note 8 A. L. R. 783.

"The rule has also been applied to porches * * * and roofs." 16 R. C. L., sec. 558, page 1039.

"The liability of a landlord for the failure to maintain the portions of his premises, used in common, reasonably safe is based on negligence. * * * It is not necessary that the knowledge of the landlord should be actual. If his want of actual knowledge is simply the result of his own negligence, knowledge will nevertheless be imputed to him." 16 R. C. L., sec. 561, p. 1042.

As we have before said, the plaintiff had no access to or control over the upper part of said building. By the clause in said lease above quoted, the first party agreed to keep said building in such condition and repair that the party of the second part's stock of goods should not be damaged by the elements. Under this provision in the lease it was not incumbent upon the plaintiff, Supnick, to give any notice whatever to Dr. Kennedy. It was Dr. Kennedy's business to see that the upper part of said building, over which he had control, was kept in such condition that the plaintiff's goods would not be damaged by any rains that might fall. On his failure to do this; he was liable for whatever damage the plaintiff might sustain. Even if it was incumbent upon the plaintiff to give notice of the defective condition of the roof, we think the evidence is sufficient to take the case to

the jury on this question, and the jury having found against the contentions of the defendant, their verdict would not be disturbed by this court on appeal.

The second contention of defendant is:

"II. The court below erred in giving of instruction No. 4, which erroneously stated the issues and instructed incorrectly upon the proposition of law involved.

"His Honor below gave to the jury instruction No. 4 as follows:

"The court instructs the jury that under and by virtue of the terms of the lease contract entered into by the plaintiff and defendant, it became and was, the duty of the defendant to keep the parts of the building not rented by the plaintiff in such condition and repair as would prevent plaintiff from damage by the elements and from being interrupted in the quiet enjoyment of the part of the building leased by the plaintiff.

"If, therefore, you find from a preponderance of the evidence that, without fault upon the part of the plaintiff, the defendant knowingly or negligently allowed other portions of the said building not leased by plaintiff nor within his control to fall in such condition of lack of repair as to allow rain to fall or soak through the roof, and thus fall upon the goods and merchandise of the plaintiff in the part of the premises leased and occupied by the plaintiff, and thus to cause the destruction of a part of said goods or merchandise, or deterioration in the value thereof, the defendant would be liable to the plaintiff in such sum as you find from the evidence that it would require to compensate the plaintiff for the loss and damage so suffered."

Under the defendant's liability as stated above, this instruction correctly stated the law. It is contended, however, that this instruction is not based upon any issue raised by the pleadings. With this contention we do not agree, and quote from the petition as follows:

"4. That contrary to said provision in said lease above mentioned, the defendant carelessly and negligently and without regard to the rights of the plaintiff or the terms of the written lease above referred to, allowed and permitted the roof on said building to become defective, leaky and out of repair, so that same would not shed water, but on the contrary would permit water from rains to run and percolate through and permeate the said roof in such a way as to cause said water to drop, fall upon and drip through upon the said storeroom occupied by the plaintiff and the stock of merchandise contained therein as hereinafter set forth.

"5. That the plaintiff, at all times hereinafter mentioned was a merchant, engaged in,

dealing in, buying and selling gas and electric lights and fixtures, globes, gas mantles, and various kinds of merchandise and supplies commonly and ordinarily used in connection with the said business; that the said goods and merchandise is to a large extent of a perishable nature and is liable to be damaged and ruined by water.

"6. That on November 27, 1917, a rain occurred, and as a result of the defective condition of the said roof of said building, so due to the negligence and carelessness of the defendant, large quantities of water from said rain came through said roof and through the intervening space and fell upon the merchandise of the plaintiff so stored in the said storeroom; that as a result thereof a large quantity of the said merchandise, including chains, canopy screws, brass knobs, gas and electric fixtures, gas mantles, and other property, including typewriter, stationery, etc., an itemized list of which is hereto attached, marked 'Exhibit C' and made a part hereof, was injured, defected, marred and destroyed.

"7. That the plaintiff had previously called the attention of the defendant to the defective condition of said premises and that the defendant promised and agreed to repair same, but that, although fully aware of the said defective condition of said roof, as above set forth, negligently and carelessly permitted and allowed the said roof to so remain in such condition."

Paragraph 4 clearly raised this issue, and the authorities cited by defendant to sustain his contention are not in point. The fact that in paragraph 7 of the petition the plaintiff alleges that he had previously called the attention of the defendant to the defective condition of the premises does not lessen the force or effect of paragraph 4; neither is it a waiver of the issue raised by paragraph 4.

III. The court below erred in refusing to permit defendant to offer evidence in refutation of plaintiff's claim concerning the quantity of water which had leaked into plaintiff's store from the alleged defective roof.

We have examined the offer made by the defendant complained of. The question for the jury to determine was the amount of damage sustained by the plaintiff, and not how much water was caught in tubs and pans in the rooming house on the floor above which was not permitted to leak down through and damage plaintiff's goods in the storeroom below. If the defendant would be entitled to make the proof proffered, he would then be entitled to prove that the "major portion" of the water that fell on the roof ran into the eaves spout and was carried off through the down spout:

that only a "small quantity" of the rain which fell on the roof of the building leaked through. If it happened to be a six-inch rainfall, one-sixth of the water leaking through would be a "small quantity"; five-sixths would be the "major portion", yet plaintiff's goods could be very materially damaged by a rainfall of one inch. In refusing to admit this testimony of witness Fowler, the court made the following ruling:

"The Court. I will rule on it and then I will make my statement in the record. That is going a little further than what the offer was stated to the court. Is that complete now? Mr. Marshall: Yes, sir; tnat is complete. The Court: The offer is refused and permission is now given to counsel to interrogate the witness fully, upon the conditions of the building that was occupied by the plaintiff in this case."

The defendant thereupon excused witness Fowler, without exercising the right given him by court to further interrogate the witness.

"IV. The court erred in refusing to permit defendant to cross-examine plaintiff, as a witness for himself, upon the subject of plaintiff's negligence which contributed to the injury complained of."

Under the rule of defendant's liability heretofore announced, there was no contributory negligence on the part of the plaintiff in failing to do the things complained of by the defendant. This testimony was inadmissible on cross-examination for another reason. If it had been admissible for any purpose, it would have been to establish defendant's defense. It is fundamental that tne defendant should not be permitted to make his defense by the cross-examination of the plaintiff or plaintiff's witnesses on matters not touched upon in the examination in chief.

"The cross-examination of a witness should be confined to the subject-matter of his direct examination." Chicago, R. I. & P. R. Co. v. Beatty, 34 Okla. 321, 118 Pac. 367; Northern Pac. v. Urlin, 158 U. S. 271.

"A party cannot introduce his own case in chief by cross-examination of the adverse party's witnesses." 40 Cyc. 2477-8.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.